UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                   )
ABDUL KARIM HASSAN,                )
                                   )
            Plaintiff,             )
                                   )  Civil Action No. 11-2189 (EGS)
        v.                         )
                                   )
FEDERAL ELECTION COMMISSION,       )
                                   )
            Defendant.             )
_____)

**MEMORANDUM OPINION**

Plaintiff Abdul Karim Hassan brings this action against the Federal Election Commission ("FEC"), seeking a declaratory judgment that (1) the Presidential Election Campaign Fund Act, 26 U.S.C. §§ 9001-9013, which provides public funding to Presidential nominees of major or minor political parties, is unconstitutional and invalid, and (2) the natural born citizen clause of the Constitution[1] is irreconcilable with, and has been "trumped, abrogated and implicitly repealed" by, the Equal Protection guarantee of the Fifth Amendment and the Citizenship Clause of the Fourteenth Amendment. Compl. ¶¶ 1, 31-32. Pending before the Court is Defendant's Motion to Dismiss for lack of jurisdiction under Rule 12(b)(1), or in the alternative,

---

[1] Article II, section 1, clause 5 of the United States Constitution provides, in pertinent part, "[n]o person except a natural born Citizen . . . shall be eligible to the Office of President."

for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Also pending before the Court is Plaintiff's Application for a Three-Judge Court.  Upon consideration of the motions, the responses and replies thereto, the applicable law, the entire record in this case, and for the reasons set forth below, the Court will **GRANT** Defendant's Motion to Dismiss and will **DENY** Plaintiff's Application for a Three-Judge Court.

I.   BACKGROUND

   A.   **Statutory Background**

The Presidential Election Campaign Fund Act (the "Fund Act") offers the Presidential candidates of major and minor political parties the option of public financing for their general election campaigns.  *See* 26 U.S.C. §§ 9001-9013.  The amount of funding that a candidate is eligible to receive is based upon the percentage of the popular vote the candidate's party received in the prior election.  A "major" party is one that receives 25 percent or more of the popular vote; major party candidates receive the largest subsidy.  *Id.* §§ 9002(6), 9004(a).  A "minor" party is one whose candidate received between 5 and 25 percent of the total popular vote in the preceding presidential election; minor party candidates receive a lesser subsidy, proportionate to the number of votes received in the preceding election.  *Id.* §§ 9002(7), 9004(a).  Candidates

of parties receiving less than five percent of the vote receive nothing. *Id.* § 9004(a). Only "candidates" of a political party are eligible for payments, pursuant to 26 U.S.C. § 9003(a).[2] The Fund Act provides for actions to construe it to be heard by a three-judge panel, in accordance with the provisions of 28 U.S.C. § 2284, with direct appeal to the Supreme Court. *Id.* § 9011(b).

**B.   Factual and Procedural Background**

Plaintiff Hassan is a Guyana native and a naturalized American citizen. *See* Compl. ¶¶ 1, 8, 10. In March of 2008, Hassan announced his candidacy for President of the United States through his website, www.abdulhassanforpresident.com. Compl. ¶ 13. Hassan alleges that he is running in the 2012 election and intends to continue his campaign uninterrupted until the 2016 election if he is not successful this year. Compl. ¶ 14. In his Opposition, Hassan makes clear that he is seeking the nomination of the Democratic Party in 2012 and in 2016. Pl.'s Opp'n at 1; *see also* Pl.'s Reply in Supp. of Appl. for Three-Judge Ct. at 1. Hassan satisfies all constitutional requirements for holding the Office of the President except the

---

[2] The Fund Act defines a "candidate" as "an individual who (A) has been nominated for election to the office of President of the United States . . . by a major party, or (B) has qualified to have his name on the election ballot . . . as the candidate of a political party . . . in 10 or more States." 26 U.S.C. § 9002(2).

requirement established in Article II, section 1, clause 5 that the President be a natural born citizen (the "natural born citizen requirement"). Compl. ¶ 12. In support of his campaign, Hassan alleges that he has created and maintained a campaign website, implemented a paid advertising campaign through the Google search engine to promote his candidacy, run videos on Youtube.com, and participated in interviews. Compl. ¶¶ 13, 15-22.

In July 2011, Hassan requested an advisory opinion from the FEC concerning the application of the Presidential Primary Matching Payment Account Act, 26 U.S.C. §§ 9031-9042 ("Matching Payment Act"),[3] to Hassan's presidential campaign. On September 2, 2011, the FEC issued its response, in which it stated that Hassan is not eligible to receive matching funds under the Matching Payment Act because he is not a natural born citizen. *See* Compl. ¶ 24; *see also* FEC Advisory Opinion 2011-15 at 3-4 (Sept. 2, 2011), *available at* http://saos.nictusa.com/saos/searchao (accessed by searching "2011-15" in "Go to AO number" field). This ruling did not address the Fund Act, but according to Plaintiff, the logic and reasoning of the FEC's opinion would lead to the conclusion that

---

[3] The Matching Payment Act establishes a voluntary system of public financing for major and minor party primary elections, rather than the general election.

4

Hassan similarly is ineligible to receive funds under the Fund Act. *See* Compl. ¶ 25.[4] Plaintiff alleges that because he cannot obtain funds under the Fund Act, his chances of becoming the nominee of a major political party -- and thus winning the Presidency -- are destroyed. Compl. ¶ 26.

Plaintiff filed his Complaint in this Court on December 8, 2011. Simultaneously therewith, Plaintiff filed an Application for a Three-Judge Court pursuant to 26 U.S.C. § 9011. In response, Defendant argued that this Court should deny Plaintiff's Application because the Complaint fails to present an Article III case or controversy, and alternatively, because it does not present a substantial constitutional question. On February 27, 2012, Defendant filed a Motion to Dismiss the Complaint pursuant to Rules 12(b)(1) and 12(b)(6). The motions are ripe for determination by the Court.

## II.  STANDARDS OF REVIEW

### A.  Rule 12(b)(1)

Federal district courts are courts of limited jurisdiction, *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994), and a Rule 12(b)(1) motion for dismissal presents a threshold challenge to a court's jurisdiction, *Haase v. Sessions*, 835 F.2d 902, 906 (D.C. Cir. 1987). On a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), the

---

[4] Defendant does not appear to dispute this assertion.

plaintiff bears the burden of establishing that the court has jurisdiction. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).  In evaluating such a motion, the court must accept as true all of the factual allegations contained in the complaint, and should review the complaint liberally while accepting all inferences favorable to the plaintiff.  *See Barr v. Clinton*, 370 F.3d 1196, 1199 (D.C. Cir. 2004); *Wilson v. Dist. of Columbia*, 269 F.R.D. 8, 11 (D.D.C. 2010).  Because subject matter jurisdiction focuses on the court's power to hear the claim, however, the court must give the plaintiff's factual allegations closer scrutiny when resolving a Rule 12(b)(1) motion than would be required for a Rule 12(b)(6) motion.  *Macharia v. United States*, 334 F.3d 61, 67-68 (D.C. Cir. 2003).  Thus, to determine whether it has jurisdiction over a claim, the court may consider materials outside the pleadings where necessary to resolve disputed jurisdictional facts.  *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992).

  **B.** **Rule 12(b)(6)**

  A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a complaint. *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002).  A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks and citations omitted).  "'[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint,'" *Atherton v. D.C. Office of the Mayor*, 567 F.3d 672, 681 (D.C. Cir. 2009) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)), and grant the plaintiff "the benefit of all inferences that can be derived from the facts alleged." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994).  A court need not, however, "accept inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint.  Nor must the court accept legal conclusions cast in the form of factual allegations."  *Id.*  In addition, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).  "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss."  *Id.* at 679.

Federal courts have long recognized that the pleadings of a *pro se* litigant must be construed liberally and held "to less stringent standards than formal pleadings drafted by lawyers." *Erickson*, 551 U.S. at 94 (citation omitted).  Hassan is a lawyer, however; therefore, the Court need not afford him the benefits of liberal construction to which an untrained *pro se*

7

litigant is entitled.  *See, e.g.*, *Harbulak v. Suffolk*, 654 F.2d 194, 198 (2d Cir. 1981) ("[Plaintiff] is a lawyer and, therefore, he cannot claim the special consideration which the courts customarily grant to *pro se* parties."); *Davey v. Dolan*, 453 F. Supp. 2d 749, 754 (S.D.N.Y. 2006); *Guardino v. Am. Sav. & Loan Ass'n*, 593 F. Supp. 691, 694 (E.D.N.Y. 1984); *see also Kroger v. Legalbill.com LLC*, 436 F. Supp. 2d 97, 107-08 (D.D.C. 2006) (recognizing that because *pro se* plaintiff was a lawyer, allegations raised for the first time in his opposition were not entitled to a greater degree of leniency).

**III. ANALYSIS**

   **A.   Standing**

As a threshold matter, Hassan argues that because the Fund Act grants him a private right of action,[5] the Court should infer that Congress was "making an informed judgment that uncertainty over the Fund Act creates 'injury in fact' and that such injury

---

[5] The Fund Act provides, in relevant part: "The Commission, the national committee of any political party, and individuals eligible to vote for President are authorized to institute such actions, including actions for declaratory judgment or injunctive relief, as may be appropriate to implement or construe any provision of this chapter."  26 U.S.C. § 9011(b)(1); *see also FEC v. Nat'l Conservative Political Action Comm.*, 470 U.S. 480, 487 (1984) (holding that, although private parties do not have standing to sue other private parties under the Act, "an 'appropriate' role for private parties under § 9011(b)(1) [is] to bring suits against the FEC to challenge its interpretations of various provisions of the Act").  Neither party disputes that the statute provides Hassan with authority to bring suit.

should be remedied by a declaratory judgment action like this one[.]" Pl.'s Opp'n at 4.  As Plaintiff himself recognizes, however, Congress' grant of a right to sue cannot abrogate the requirements of Article III standing.  *See id.*  Article III standing is "immutable" and cannot be "modified or abrogated by Congress."  *Bennett v. Spear*, 520 U.S. 154, 162 (1997); *see also Raines v. Byrd*, 521 U.S. 811, 820 n.3 (1997) ("Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing."); *Natural Res. Def. Council v. Pena*, 147 F.3d 1012, 1020 (D.C. Cir. 1998).  Hassan still bears the burden of demonstrating Article III standing.  *Lujan*, 504 U.S. at 561.

To establish Article III standing, a plaintiff must show that: (1) he has suffered an "injury in fact" which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical; (2) there is a causal connection between the alleged injury and the conduct complained of that is fairly traceable to the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *Lujan*, 504 U.S. at 560-61.  "[T]he underlying purpose of the imminence requirement is to ensure that the court in which suit is brought does not render an advisory opinion in 'a case in which no injury would have occurred at all.'" *Animal Legal Def. Fund v. Espy*, 23 F.3d 496,

9

500 (D.C. Cir. 1994) (quoting *Lujan*, 504 U.S. at 564 n.2). A claim is not sufficient if the injury is "speculative at best." *Transmission Agency of N. Cal. v. FERC*, 495 F.3d 663, 670 (D.C. Cir. 2007).

Hassan alleges that the injury he has suffered "includes his inability and the denial of the right to obtain tens of millions [of dollars] in public funding, if nominated." Pl.'s Opp'n at 3. The key phrase here is "if nominated." Because only the nominee of a major or minor political party qualifies for funding, Hassan must demonstrate that he is a party's nominee or that his nomination is imminent. Yet Hassan has not alleged sufficient facts to show that he will actually or imminently be the nominee of a major or minor political party (let alone the Democratic Party, which he specifies is his goal). Rather, he has only announced his intention to run, created an online presence, and filed a series of lawsuits. These actions are inadequate to establish that Hassan will imminently be nominated.

In addition, Hassan relies on *Adarand Constructors, Inc. v. Pena*, 515 U.S. 200 (1995), for the proposition that to satisfy the injury-in-fact element, he need not demonstrate that he has been or imminently will be injured, but only that he is forced to compete on unequal footing. *See* Pl.'s Opp'n at 6. In *Adarand*, the plaintiff, a subcontractor that was not awarded a

federal highway project, challenged the constitutionality of a federal program designed to provide contracts to disadvantaged businesses.  The Supreme Court held that plaintiff did not need to prove that it had been, or would be, the low bidder on a government contract in order to demonstrate standing.  Rather, "[t]he injury in cases of this kind is that a 'discriminatory classification prevent[s] the plaintiff from competing on an equal footing.'"  *Adarand*, 515 U.S. at 211 (quoting *Ne. Fla. Chapter, Associated Gen. Contractors of Am. v. Jacksonville*, 508 U.S. 656, 667 (1993)).  Although the plaintiff did not have to show that it would have been awarded a contract but for the preference for disadvantaged businesses, it still had to show that its injury was indeed imminent.  *Id.* at 211.  The Court found that the plaintiff had presented concrete evidence -- in the form of the company's bidding history and practices, as well as the availability of future government contracts -- in order to demonstrate that it would "very likely" continue to submit relevant bids.  *Id.* at 211-12.  Therefore, the Court found that the plaintiff's injury was "certainly impending."  *Id.* at 211 (quoting *Lujan*, 504 U.S. at 564 n.2).

Hassan has not met his burden of showing that the injury here is "certainly impending," as it was in *Adarand*.  As noted above, Hassan cannot be injured unless he is actually or imminently likely to be the Democratic nominee for the office of

11

President.[6]  Because he has not alleged or provided any indication that such a nomination is imminent, Hassan has not

---

[6] For this reason, the challenge presented here differs from Hassan's other lawsuits, which challenge a number of states and state authorities for not permitting Hassan to be listed on the election ballot. *See Hassan v. Colorado*, --- F. Supp. 2d ----, No. 11-3116, 2012 WL 1560449 (D. Colo. May 3, 2012); *Hassan v. Montana*, No. 11-cv-00072-DWM, slip op. (D. Mont. May 3, 2012) (Docket No. 22); *Hassan v. Iowa*, No. 4-11-CV-00574, slip op. (S.D. Iowa Apr. 26, 2012) (Docket No. 16); *Hassan v. New Hampshire*, No. 11-cv-552-JD, 2012 WL 405620 (D.N.H. Feb. 8, 2012). At least one of those courts found that Hassan had standing because he alleged that if he succeeded with his litigation, he immediately would be "able and ready" to seek a place on Iowa's Presidential ballot. *See Hassan v. Iowa*, slip op. at 5 (citing *Gratz v. Bollinger*, 539 U.S. 244, 262 (2003) (finding standing to challenge application process even though plaintiff had not yet submitted transfer application, based on plaintiff's demonstration that he was "able and ready" to apply)). That is a far cry from the threshold here: even assuming Hassan succeeds in this litigation, he cannot demonstrate that he is able and ready to receive funding through the Fund Act because he must first be the nominee of a major or minor political party.

Likewise, although Plaintiff does not assert it as a basis for standing, the Court also finds this case distinct from so-called "competitor standing" cases, in which already established candidates have been found to have standing to challenge an "assertedly illegal benefit" being conferred upon someone with whom those candidates compete. *Gottlieb v. FEC*, 143 F.3d 618, 620-21 (D.C. Cir. 1998); *cf. Becker v. FEC*, 230 F.3d 381, 386-87 (1st Cir. 2000) (holding that Ralph Nader, as the Green Party nominee for the 2000 presidential election, had standing to challenge FEC regulations allowing corporate sponsorship of presidential debates); *Buchanan v. FEC*, 112 F. Supp. 2d 58, 65-66 (D.D.C. 2000) (finding that Pat Buchanan, the Reform Party's nominee for President, had standing to challenge alleged impartial criteria used to determine participation in presidential debates, in violation of FEC regulations); *Natural Law Party of the U.S. v. FEC*, 111 F. Supp. 2d 33, 44-45 (D.D.C. 2000); *see also Comm. for a Unified Indep. Party, Inc. v. FEC*, No. 00-3476, 2001 WL 1218395, *4-6 (S.D.N.Y. Oct. 11, 2001) (finding that minor parties did not have competitor standing

demonstrated that his injury is "certainly impending."[7] In other words, to be in an analogous position to the plaintiff in *Adarand*, Hassan would have to show that at some imminent or identifiable future time, he will be the nominee of a major or minor political party, as defined in the Fund Act, but will be denied funding, on unequal footing with natural born citizens.

Furthermore, in a suit alleging identical claims regarding the natural born citizen requirement, the Second Circuit already concluded that Hassan lacked Article III standing. *See Hassan v. United States*, 441 F. App'x 10, 11-12 (2d Cir. 2011), *cert.*

---

where they had not nominated a candidate for the election, nor did a purported nominee have standing where she was "not now a candidate, nor is there any indication she will be one in the future"). In *Gottleib*, although the D.C. Circuit noted that a candidate -- as opposed to individual voters and political action groups -- would theoretically have standing based upon a "competitive injury," the court held that the plaintiff still must "show that he personally competes in the same arena with the same party to whom the government has bestowed the assertedly illegal benefit." 143 F.3d at 621 (citation omitted). Here, Plaintiff cannot show that he personally competes in the same arena with candidates who receive funding under the Fund Act because he has not shown that he is or imminently will be eligible for that funding.

[7] Hassan also likens his injury to that at issue in *FEC v. Akins*, 524 U.S. 11 (1998). *See* Pl.'s Opp'n at 3-4. In *Akins*, the Supreme Court held that respondents were injured when they could not obtain information which they alleged a public affairs organization was required by law to disclose. *See Akins*, 524 U.S. at 21. Hassan's purported injury is distinguishable from the informational injury found in *Akins*. There, had the information sought by respondents been made public, they would have been able to access it. Here, by contrast, Hassan is not yet eligible to receive public funding, and he has not shown that he imminently will be. Hassan thus cannot rely on *Akins* to demonstrate that he will suffer an injury in fact.

*denied*, 132 S. Ct. 1016 (2012).  There, the court stated, "Hassan's bare assertion that he 'intends to seek the Presidency of the United States in the year 2012, and thereafter if necessary,' is, by itself, insufficient to establish the sort of 'actual or imminent, not conjectural or hypothetical' injury required to establish standing." *Id.* at 11.  "That he *might* mount a run for the presidency which *might* result in some form of future injury is simply insufficient to satisfy the injury-in-fact requirement."  *Id.*  Further, the court noted:

> [E]ven were we to credit Hassan's proffered intention to run, Hassan has nonetheless failed to allege with any specificity how the natural born citizen requirement has already injured him or is likely to injure him in the immediate future.  Hassan does not allege, for example, that any potential voter or contributor has declined to support him in light of his ineligibility for office if elected, nor does he allege that he has been rebuffed in any attempt to get on the ballot in any state or affiliate with any party.

*Id.* at 12.

Here, the Complaint alleges that Hassan has established a website, paid for online advertising, posted videos on Youtube.com, and participated in interviews, Compl. ¶¶ 13–19, many of the same steps he had taken before instituting his action in the District Court for the Eastern District of New York.  These minimal actions remain insufficient to demonstrate the sort of imminent injury in fact required for Article III standing.  Therefore, Hassan has failed to meet his burden of

establishing that he will actually and imminently be in a position to be affected by the natural born citizen requirement, or eligible for public funding under the Fund Act.[8] However, even assuming Plaintiff had standing to pursue his claims, the Court would find that these claims fail as a matter of law for the same reasons that have been asserted by all of the other courts to consider Hassan's claims.

**B.   Failure to State a Claim**

Hassan's challenge to the Fund Act rests on his contention that the natural born citizen requirement has been implicitly repealed by the Fifth and Fourteenth Amendments. The Court need

---

[8] The Court would similarly find that Hassan has failed to establish causation or redressability in order to demonstrate standing. Hassan argues that "whether a candidate can receive tens of millions in public funding is a significant factor that would influence whether a voter would vote for plaintiff as the candidate of the Democratic Party." Pl.'s Opp'n at 5. However, Hassan does not allege that any single voter -- let alone a significant number of voters -- has actually been influenced by his ineligibility for public funding. *See Hassan*, 441 F. App'x at 12. Moreover, Hassan has not alleged any concrete facts showing that the natural born citizen requirement, as applied through the Fund Act, rather than some other factor, has caused the alleged harm to his campaign (namely, his ineligibility to receive funding). As this Circuit has recognized, "[t]he endless number of diverse factors potentially contributing to the outcome of . . . elections, caucuses, and conventions forecloses any reliable conclusion that voter support of a candidate is 'fairly traceable' to any particular event." *Winpisinger v. Watson*, 628 F.2d 133, 139 (D.C. Cir. 1980). Further, striking down the alleged discrimination in the Fund Act would not necessarily redress Hassan's purported harm because the Fund Act would not apply to Hassan unless he became a party's nominee. It is therefore speculative that a favorable decision on the merits would redress Hassan's alleged injury.

not repeat the thorough and persuasive opinions issued by its colleagues in at least five other jurisdictions, all of whom determined that the natural born citizen requirement has not been implicitly repealed by the Fifth and Fourteenth Amendments. *See Hassan v. Colorado*, 2012 WL 1560449, at *5-8, *aff'd*, No. 12-1190, 2012 WL 3798182, *1 (10th Cir. Sept. 4, 2012); *Hassan v. Montana*, slip op. at 3-5; *Hassan v. Iowa*, slip op. at 7-11; *Hassan v. New Hampshire*, 2012 WL 405620, at *2-4; *Hassan v. United States*, No. 08-CV-938 (NG), slip op. at 3-6 (E.D.N.Y. June 15, 2010) (Docket No. 28), *aff'd on other grounds*, 414 F. App'x 10.

Briefly, the Court notes that Article 5 of the Constitution provides an explicit method to amend the Constitution. *See* U.S. Const., Art. V. Even if a constitutional provision could be implicitly repealed in the same manner as a statute, the implicit repeal of statutes is disfavored and will not be found absent clearly expressed congressional intent. *See Nat'l Ass'n of Home Builders v. Defenders of Wildlife*, 551 U.S. 644, 662 (2007); *Posadas v. Nat'l City Bank*, 296 U.S. 497, 503 (1936) (holding that "[w]here there are two acts upon the same subject, effect should be given to both if possible"). Repeals by implication are only found where provisions in two statutes are in "irreconcilable conflict, or where the latter act covers the whole subject of the earlier one and is clearly intended as a

16

substitute." *Branch v. Smith*, 538 U.S. 254, 273 (2003) (internal quotation marks and citation omitted). Plaintiff has not pointed to any such manifest intent[9] or irreconcilable conflict, and therefore he has not carried the high burden necessary to demonstrate that the natural born citizen requirement has been implicitly repealed. Moreover, the Supreme Court has consistently held that the distinction between natural born citizens and naturalized citizens in the context of Presidential eligibility remains valid. *See Schneider v. Rusk*, 377 U.S. 163, 165 (1964) ("The only difference drawn by the Constitution is that only the 'natural born' citizen is eligible to be President."); *see also Knauer v. United States*, 328 U.S. 654, 658 (1946) (same); *Baumgartner v. United States*, 322 U.S. 665, 673–674 (1944) (same).

Plaintiff essentially asks this Court to declare that a provision of the Constitution is itself unconstitutional. It is beyond this Court's authority to do so. "[T]his Court lacks the power to grant the relief sought because the Court, as interpreter and enforcer of the words of the Constitution, is not empowered to strike the document's text on the basis that it is offensive to itself or is in some way internally

---

[9] Indeed, in the few years following the ratification of the Fourteenth Amendment, Congress considered *and rejected* numerous proposals to amend or repeal the natural born citizen requirement. *See Hassan v. New Hampshire*, 2012 WL 405620, at *3-4 (citing secondary authorities).

17

inconsistent." *New v. Pelosi*, No. 08-Civ.-9055(AKH), 2008 WL 4755414, *2 (S.D.N.Y. Oct. 29, 2008) (internal quotation marks and citation omitted), *aff'd*, 374 F. App'x 158 (2d Cir. 2010).

Because the natural born citizen requirement has not been explicitly or implicitly repealed, Hassan's challenge to that provision, and the Fund Act's incorporation thereof, must fail.

**C.   Plaintiff's Application for a Three-Judge Panel**

Section 9011(b)(2) of the Fund Act provides:

> The district courts of the United States shall have jurisdiction of proceedings instituted pursuant to this subsection . . . .  Such proceedings shall be heard and determined by a court of three judges in accordance with the provisions of [28 U.S.C. § 2284], and any appeal shall lie to the Supreme Court.

26 U.S.C. § 9011(b)(2).

A three-judge court is not required, however, when the Court lacks jurisdiction over a plaintiff's claims.  As the D.C. Circuit has stated, "an individual district court judge may consider threshold jurisdictional challenges prior to convening a three-judge panel."  *Wertheimer v. FEC*, 268 F.3d 1070, 1072 (D.C. Cir. 2001) (citing *Gonzalez v. Automatic Emps. Credit Union*, 419 U.S. 90 (1974); *Reuss v. Balles*, 584 F.2d 461, 464 n.8 (D.C. Cir. 1978), *cert. denied*, 439 U.S. 997 (1978)).  The Supreme Court's "interpretation of the three-judge-court statutes has frequently deviated from the path of literalism.  If the

opaque terms and prolix syntax of these statutes were given their full play, three-judge courts would be convened . . . in many circumstances where such extraordinary procedures would serve no discernible purpose." *Gonzalez*, 419 U.S. at 96-97.  A three-judge court is not required "where the district court itself lacks jurisdiction of the complaint or the complaint is not justiciable in the federal courts." *Id.* at 100; *see also Giles v. Ashcroft*, 193 F. Supp. 2d 258, 262-63 (D.D.C. 2002) (finding that convening a three-judge court was unwarranted since plaintiff lacked standing to bring his constitutional claims).  Because the Court concludes that it does not have jurisdiction over this suit, the Court will **DENY** Plaintiff's Application for a Three-Judge Court.[10]

---

[10] Defendant also argues that Plaintiff's Application for a Three-Judge Court should be denied because this case fails to present a substantial constitutional claim.  Section 9011(b) explicitly requires that it be construed in accordance with the three-judge-court provision in 28 U.S.C. § 2284.  Courts have interpreted Section 2284 to require a three-judge court only if the complaint states a "substantial" constitutional claim. *Giles*, 193 F. Supp. 2d at 262.  A three-judge court is not necessary if the claim is "wholly insubstantial," "frivolous," or "obviously without merit." *Goosby v. Osser*, 409 U.S. 512, 518 (1973); *see also Judd v. FCC*, 723 F. Supp. 2d 221, 223 (D.D.C. 2010) ("In determining whether to request the Chief Judge of the Circuit to convene a three-judge court, a single judge has the authority to decide whether the complaint states a 'substantial' constitutional claim." (citations omitted)).  A claim is insubstantial if it is obviously without merit or clearly determined by previous case law. *Judd*, 723 F. Supp. 2d at 223.  In his Notice of Supplemental Authorities, Hassan

19

**IV.  CONCLUSION**

For the foregoing reasons, Defendant's Motion to Dismiss is **GRANTED**, and Plaintiff's Application for a Three-Judge Court is **DENIED**.  A separate Order accompanies this Memorandum Opinion.

**SIGNED:     Emmet G. Sullivan**
**United States District Judge**
**September 28, 2012**

---

argues that he presents a substantial question for purposes of convening a three-judge court because the issues raised are issues of first impression.  In addition, he argues that because none of the other five district courts which have dismissed his case on the merits explicitly found the case to be insubstantial or frivolous (though there is no indication such an argument was presented), there is no legal basis for finding that the issues here are insubstantial.  To the contrary, that five other district courts have reached the identical conclusion on the merits of Hassan's challenge, based on nearly identical reasoning, persuades the Court that this case does not present issues that are sufficiently substantial or appropriate to occupy the judicial resources of three judges in this jurisdiction.  Moreover, that other courts acknowledged that there was no precedent directly on point for Hassan's novel theories does not render this an issue of first impression appropriate for a three-judge court.

20